# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 9:17-CV-80358-ROSENBERG/HOPKINS

J.V.M.,

      Plaintiff,

v.

TOWN OF PALM BEACH SHORES
and CHARLES HOEFFER,

      Defendants.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT II

**THIS CAUSE** is before the Court on Defendant, Town of Palm Beach Shores', Motion to Dismiss Count II of Plaintiff's First Amended Complaint and Memorandum of Law in Support [DE 40]. The Court has carefully considered Defendant's Motion, Plaintiff's Memorandum of Law in Opposition thereto [DE 48], and Defendant's Reply [DE 51], and is otherwise fully advised in the premises. For the reasons set forth below, Defendant's Motion is **DENIED**.

## I.      INTRODUCTION

This action arises out of two alleged incidents of sexual assault committed against Plaintiff by Defendant Charles Hoeffer while he was employed as a police officer with the Town of Palm Beach Shores Police Department. In her First Amended Complaint [DE 32], Plaintiff asserts claims against Defendant Hoeffer for violation of her civil rights, battery, assault, and intentional infliction of emotional distress, and against Defendant Town of Palm Beach Shores for violation of her civil rights and negligent hiring, supervision, retention, and training. Only one of these claims is at issue for purposes of the Motion presently before the Court: Plaintiff's

claim against Defendant Town of Palm Beach Shores for violation of her civil rights pursuant to 42 U.S.C. § 1983, asserted in Count II of Plaintiff's First Amended Complaint.

Defendant Town of Palm Beach Shores argues that this claim must be dismissed because Plaintiff has not sufficiently alleged (1) that Defendant Hoeffer was acting under color of state law at the time of the alleged incidents and (2) that Defendant Town of Palm Beach Shores exhibited deliberate indifference in failing to train its police officers not to commit sexual assaults. The Court disagrees on both points and concludes that Plaintiff's allegations are sufficient. Accordingly, Defendant's Motion must be denied.

## II.  BACKGROUND[1]

Defendant Charles Hoeffer was employed as a police officer with the Town of Palm Beach Shores Police Department from 2008 to 2016. DE 32, First Amended Complaint ¶ 6. The Town of Palm Beach Shores Police Department follows a "community policing philosophy" with a focus on "excellent community involvement and support." *Id.* ¶ 39. Officers are encouraged to interact with residents, get to know them, and provide a friendly face. *Id.* ¶ 40. It is common for officers to engage in friendly conversation with residents while they walk their dogs, exercise, or ride bicycles around the Town. *Id.* ¶ 41.

Plaintiff first met Defendant Hoeffer when she was walking her dogs around the Town of Palm Beach Shores. *Id.* ¶ 50. Subsequently, while wearing his police uniform and driving his police vehicle, Defendant Hoeffer—who asked Plaintiff to call him "Charlie"—approached Plaintiff and engaged her in conversation on multiple occasions while Plaintiff walked around the Town. *Id.* ¶ 51.

---

[1] The background facts set forth herein are drawn from Plaintiff's First Amended Complaint. For purposes of the Motion presently before it, the Court views the First Amended Complaint in the light most favorable to Plaintiff and accepts all of Plaintiff's well-pleaded facts as true. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007) (citing *St. Joseph's Hosp. v. Hospital Corp. of America*, 795 F.2d at 954 (11th Cir. 1986)).

Plaintiff was comfortable engaging in conversation with Defendant Hoeffer because he was a police officer and, for that reason, she believed there was no reason to fear him. *Id.* ¶ 52. Plaintiff was also comfortable confiding in Defendant Hoeffer about certain domestic relations problems she was experiencing "[d]ue to the inherent authority and trustworthiness of police authority." *Id.* ¶ 53. Defendant Hoeffer told Plaintiff that he had special experience and police training in addressing domestic violence and that he could introduce Plaintiff to domestic violence advocates he knew through his police experience. *Id.* ¶ 56. In addition, Defendant Hoeffer confided in Plaintiff about his own life, including his daughter's struggle with cancer. *Id.* ¶ 54. While on duty, in uniform, and driving his police vehicle, Defendant Hoeffer frequently stopped at Plaintiff's home and visited with her dogs. *Id.* ¶ 55.

One morning, Defendant Hoeffer waved Plaintiff down for a conversation while she was riding her bicycle around the Town. *Id.* ¶ 57. Plaintiff was upset about something that had happened with her husband, and Defendant Hoeffer suggested that he and Plaintiff meet for coffee so that he could provide Plaintiff with information about domestic violence and about calls to which the Town of Palm Beach Shores Police Department had responded at her husband's home before their marriage. *Id.* ¶ 57. It was clear to Plaintiff that Defendant Hoeffer was using his power and authority as a police officer to obtain information and provide it to Plaintiff. *Id.* Defendant Hoeffer gave Plaintiff two different cell phone numbers where she could reach him if she needed anything. *Id.* ¶ 58.

One evening in August 2013, Defendant Hoeffer called Plaintiff and invited her to meet him for coffee so that he could provide her with information about domestic violence and with Town of Palm Beach Shores Police Department reports about her husband. *Id.* ¶ 59. Defendant Hoeffer told Plaintiff to meet him in a neighboring city and gave her specific directions. *Id.* ¶ 60.

Plaintiff followed those directions and parked her vehicle where Defendant Hoeffer told her to meet him. *Id.* ¶ 61. Plaintiff then got into Defendant Hoeffer's vehicle, believing that they were going to get coffee as arranged. *Id.* As they drove, Plaintiff began discussing her domestic violence problems, but Defendant Hoeffer did not want to discuss her problems. *Id.* ¶ 62. Instead of getting coffee, Defendant Hoeffer drove her to a deserted location. *Id.*

At the deserted location, Defendant Hoeffer lunged at Plaintiff in an attempt to kiss her, but Plaintiff "immediately and forcefully" resisted. *Id.* ¶ 63. Defendant Hoeffer then grabbed Plaintiff's breasts, but Plaintiff removed his hands. *Id.* ¶ 64. Defendant Hoeffer grabbed Plaintiff's legs, moved on top of her, and began lifting her dress, and Plaintiff tried unsuccessfully to push him off. *Id.* ¶ 65. Defendant Hoeffer let Plaintiff sit back up, then lunged at her again in another attempt to kiss her. *Id.* ¶ 66. During this incident, Defendant Hoeffer ripped a necklace from Plaintiff's neck. *Id.* ¶ 67. Finally, Defendant Hoeffer drove Plaintiff back to her vehicle without speaking, and Plaintiff drove herself home. *Id.* ¶ 68.

While on her way home, Plaintiff received a call from Defendant Hoeffer. *Id.* ¶ 69. Defendant Hoeffer told Plaintiff that her necklace was in his vehicle and that he wanted to bring it to her, but Plaintiff told him to leave it in her mailbox. *Id.* During that call, Defendant also made a sexual comment about the incident in his vehicle. *Id.* ¶ 70.

At some point after this incident, Plaintiff went to the Town of Palm Beach Shores Police Department to make a report about her husband. *Id.* ¶ 71. Defendant Hoeffer was the only police officer there at the time. *Id.* About 20 minutes after Plaintiff left, Defendant Hoeffer arrived at Plaintiff's house in uniform and parked his police vehicle in her driveway. *Id.* ¶ 72. Defendant Hoeffer "knocked on [Plaintiff's] door, stepped into the home and grabbed [Plaintiff] on her breasts," then left her home. *Id.* ¶ 72.

Since 1983, at least eleven women have reported that Defendant Hoeffer raped, assaulted, sexually harassed, or hit them. *Id.* ¶ 11. In 1983, Defendant Hoeffer's first wife called 911 to report her husband for domestic violence on two separate occasions. *Id.* ¶ 12. In 1987, Defendant Hoeffer began working as a police officer with the Delray Beach Police Department. *Id.* ¶ 13. During his employment with the Delray Beach Police Department, Defendant Hoeffer committed domestic violence against his second wife, shattering her nose with a boot and ripping a pin off her blouse. *Id.* ¶ 14. Defendant Hoeffer also verbally harassed his second wife with repeated phone calls while at work; Defendant Hoeffer was ordered to refrain from contact with his wife while Internal Affairs investigated, but he continued to harass and repeatedly contact his wife. *Id.* ¶¶ 15–18. The Delray Beach Police Department ultimately found that Defendant Hoeffer committed acts of domestic violence and harassment, sustaining the Internal Affairs complaint for unbecoming conduct, disobedience to orders, harassment, and untruthfulness. *Id.* ¶ 19. While the Delray Beach Police Department Internal Affairs investigation was pending, Defendant Hoeffer resigned from his position as a police officer. *Id.* ¶ 20.

In October 1991, Defendant Hoeffer began working with the Riviera Beach Police Department. *Id.* ¶ 22. The following July, Defendant Hoeffer was accused of domestic violence by his third wife. *Id.* ¶ 23. In 1996, while on duty with the Riviera Beach Police Department, Defendant Hoeffer was accused of taking a female to a hotel and raping her. *Id.* ¶ 24. While prosecutors declined to file criminal charges, they noted Defendant Hoeffer's history of violence against women. *Id.* As a result of the 1996 rape allegation, the Riviera Beach Police Department conducted an Internal Affairs investigation. *Id.* ¶ 25. Following that investigation, the allegations were sustained and Defendant Hoeffer's employment with the Riviera Beach Police Department was terminated. *Id.* Defendant Hoeffer was subsequently reinstated by an arbitration panel and

remained employed by the Riviera Beach Police Department until he was hired by the Town of Palm Beach Shores Police Department in 2008. *Id.* ¶¶ 25–26.

In October 2010, Defendant Hoeffer was accused of making inappropriate sexual comments to a Town of Palm Beach Shores resident after responding to a reported domestic disturbance at her home. *Id.* ¶¶ 28–29. Although the victim provided a recorded statement, the Town of Palm Beach Shores Police Department closed the Internal Affairs investigation as unfounded in December 2010, without having obtained a statement from Defendant Hoeffer. *Id.* ¶ 30. Another woman complained to the Town of Palm Beach Shores Police Department that Defendant Hoeffer made inappropriate sexual comments to her on more than one occasion while in uniform and driving his marked police vehicle. *Id.* ¶ 31. In December 2009, Defendant Hoeffer was assigned as Communications Supervisor and began supervising and training the 911 dispatchers with the Town of Palm Beach Shores Police Department, many of whom are female. *Id.* ¶ 32. While Defendant Hoeffer was Communications Supervisor, multiple female dispatchers accused him of making inappropriate sexual comments and gestures. *Id.* ¶¶ 25–26. Defendant Town of Palm Beach Shores failed to investigate any of these accusations thoroughly, take any disciplinary action, or provide training to Defendant Hoeffer. *Id.* ¶¶ 44, 47–48. As a result, Defendant Hoeffer has continued his abusive conduct toward women. *Id.* ¶¶ 45–46.

### III.  LEGAL STANDARD

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). When determining whether a claim has facial plausibility, "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). In sum, "[t]he plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).

## IV.   DISCUSSION

The Court begins by addressing whether Plaintiff has sufficiently alleged that Defendant Hoeffer was acting under color of state law during the alleged incidents of sexual assault against Plaintiff. The Court then turns to whether Plaintiff has sufficiently alleged that Defendant Town of Palm Beach Shores exhibited deliberate indifference in failing to train its police officers not to commit sexual assaults. As set forth below, the Court answers both questions in the affirmative.

## A. __Color of State Law__

"A successful section 1983 action requires that the plaintiff show she was deprived of a federal right by a person acting under color of state law." *Almand v. DeKalb Cty., Ga.*, 103 F.3d 1510, 1513 (11th Cir. 1997) (citing *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992)). "A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state." *Id.* (citing *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1522 (11th Cir. 1995)). However, "not all acts by state employees are acts under color of law. The dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual." *Id.* (internal quotation marks and citations omitted).

"[U]nder certain circumstances, a rape of a person by a police officer or other state actor could violate the constitution." *Id.* (citing *Parker v Williams*, 862 F.2d 1471 (11th Cir. 1989)). In such cases, a state employee acts under color of law when he uses his authority to create the opportunity for or to facilitate a sexual assault. *See Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1305 (11th Cir. 2001). On the other hand,

> where the performance of a state actor's official duties merely facilitated the meeting of or development of a relationship between the state actor and another person; and the state actor later, on his own time and wholly independent of his official duties, commits an assault or other constitutional tort against that person . . . the law is clear that the state actor is not acting under color of law.

*Id.* at 1306 (citing *Almand*, 103 F.3d at 1514); *see also id.* at n.12 ("Although subtle, we again reiterate the critical distinction in the color of law analysis between those cases where a state actor directly uses his official authority to create the opportunity to sexually assault a victim and those cases where a state actor merely uses his authority to develop or facilitate a relationship of trust with a victim, even though that relationship in some attenuated sense serves as a but for cause of a later sexual assault).

For example, in *Almand*, the Eleventh Circuit Court of Appeals concluded that the defendant police officer was not acting under color of law when he raped the plaintiff, with whom he had become acquainted through his official duties, at her home. *See* 103 F.3d at 1514. On the day of the rape, the defendant initially gained access to the plaintiff's home on the pretense of discussing police business—the progress of an investigation into the rape of the plaintiff's daughter. *See id.* When the defendant made sexual advances toward the plaintiff, she demanded that he leave her apartment. *Id.* The defendant complied and the plaintiff closed the front door behind him. *Id.* The defendant then forced open the front door and raped the plaintiff inside her apartment. *Id.*

The court noted that, while the defendant was not in uniform and was off-duty at the time, his initial entry into the plaintiff's apartment probably occurred under color of law because he gained access by virtue of his role as a police officer and his professed intention to discuss police business. *Id.* at 1514–15 & n.10. However, when the defendant forcibly reentered the plaintiff's apartment after having been directed to leave, "he was no different from any other ruffian." *Id.* at 1515. As the court explained,

> [the defendant's] act of breaking into the apartment and, by force, raping [the plaintiff] was a private act not accomplished because of power possessed by virtue of state law and made possible only because the wrongdoer [was] clothed with the authority of state law. Considering that [the defendant] gained entry to the apartment by forcibly breaking in, any thug or burglar could have committed the same violent acts. Once [the defendant] resorted to sheer force to break, to enter, and to rape, his status as a police officer had no bearing on his wicked behavior.

*Id.* (internal quotation marks and citations omitted). The court therefore concluded that the defendant was not acting under color of state law when he raped the plaintiff; his conduct was instead the act of a private citizen and, as such, did not violate the Constitution. *Id.*

By contrast, in *Griffin*, the Eleventh Circuit Court of Appeals concluded that the defendant, a city manager, was acting under color of law when he raped the plaintiff, a city employee. *See* 261 F.3d at 1304–05. In reaching that conclusion, the court relied on the following facts: The rape occurred following a Rotary Club meeting, which was not an official function, but which city employees were expected to attend. *Id.* at 1304. After learning that the plaintiff was having car trouble and had arranged for the police chief to drive her home, the defendant invoked his authority as city manager to create an opportunity to be alone with the plaintiff, to drive her home, and to rape her. *Id.* The defendant told the plaintiff that he would drive her home and that she should inform the police chief of that fact; the defendant himself also instructed the police chief that he would drive the plaintiff home and that the situation had been care of. *Id.* The defendant used his authority to permit the plaintiff to park her car inside the police department and told her that he would arrange for the city to fix it. *Id.* While driving to the plaintiff's home, the plaintiff and the defendant discussed her work for the city, and the defendant attempted to dissuade her from leaving her job. *Id.* When they arrived at the plaintiff's home, the defendant insisted on helping the plaintiff with equipment she had used for a musical performance during the Rotary Club meeting. *Id.* Inside her apartment, the defendant began making sexual advances; when the plaintiff resisted, the defendant reminded her of his authority. *Id.* The defendant then raped the plaintiff. *Id.*

While the court explained that these facts were sufficient on their own to conclude that the defendant was acting under color of state law at the time of the rape, the court also noted that it was viewing these facts in light of a persistent pattern of the defendant's abuse of authority and harassment of the plaintiff from the day the defendant began his employment as city manager in June 1995 until the plaintiff left her job with the city toward the end of that year. *Id.* at 1305. The

court concluded that the defendant's official interactions with the plaintiff as her boss during and after work hours, his continual sexual harassment of her during those interactions, and the ultimate rape constituted an indivisible, ongoing series of events. *Id.* "[W]ithin this context of [the defendant's] continual exploitation of and leverage of his authority over [the plaintiff]," the court found "a sufficient nexus between his duties and obligations as City Manager and [the plaintiff's] boss and the abuse of that authority to facilitate his harassment and ultimate sexual assault of her." *Id.*

In the instant case, the Court concludes that Plaintiff's allegations are sufficient, when accepted as true and viewed in the light most favorable to Plaintiff, to establish that Defendant Hoeffer was acting under color of state law during the two alleged incidents of sexual assault. In other words, Plaintiff has sufficiently alleged that Defendant Hoeffer used his authority as a police officer to create the opportunity for sexual assault.

With respect to the first incident, which occurred in Defendant Hoeffer's vehicle one evening in August 2013, Plaintiff alleges that she agreed to meet Defendant Hoeffer and get into his vehicle because he offered to provide her with information about domestic violence and with reports against her husband previously received by the Town of Palm Beach Shores Police Department. While there is no allegation that Defendant Hoeffer was assisting in the formal investigation of a domestic violence complaint made by Plaintiff at that time, Plaintiff alleges that—because Defendant Hoeffer was a police officer—she had discussed her husband's domestic violence with Defendant Hoeffer on several occasions prior to this meeting. Plaintiff further alleges that Defendant Hoeffer had professed to have special experience and police training in addressing domestic violence and said he could introduce Plaintiff to domestic violence advocates he knew through his police experience. Viewed in the light most favorable to

Plaintiff, these allegations are sufficient—even without any additional facts regarding such issues as whether Defendant Hoeffer was on duty or wearing his police uniform—to establish that Defendant Hoeffer used his role and authority as a police officer to create the opportunity for sexual assault. Accordingly, Plaintiff's First Amended Complaint sufficiently alleges that Defendant Hoeffer was acting under color of state law at the time of the first incident.

With respect to the second incident, which occurred shortly after Plaintiff formally reported her husband to the Town of Palm Beach Shores Police Department, Plaintiff alleges that Defendant Hoeffer arrived at her home in uniform and in his police vehicle. Plaintiff also alleges that Defendant Hoeffer arrived a mere 20 minutes after her report, and that—at the time of her report—Defendant Hoeffer was the only police officer at the Town of Palm Beach Shores Police Department. In light of these allegations, it is plausible that Defendant Hoeffer gained entry to Plaintiff's home on the pretense of investigating or responding to her report. Viewed in the light most favorable to Plaintiff, these allegations are sufficient to establish that Defendant Hoeffer used his role and authority as a police officer to create the opportunity for sexual assault. Accordingly, Plaintiff's First Amended Complaint sufficiently alleges that Defendant Hoeffer was acting under color of state law at the time of the second incident.

**B. <u>Deliberate Indifference and Failure to Train</u>**

In order to impose § 1983 liability on a municipality such as the Town of Palm Beach Shores, Plaintiff must identify a municipal policy or custom that caused her injuries. *Gomez v. Lozano*, 759 F. Supp. 2d 1335, 1338 (S.D. Fla. 2011) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). The municipality may be held liable "only if its custom or policy caused the municipal employees to violate a citizen's constitutional rights." *Id.* (internal quotation marks and citation omitted). "A municipality's failure to correct the constitutionally

offensive actions of its employees can rise to the level of a custom or policy if the municipality tacitly authorizes these actions or displays deliberate indifference towards the misconduct." *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1343 (S.D. Fla. 2012) (internal quotation marks and citation omitted). Thus, "[i]nadequate police training may create liability for a municipality if the inadequate training arises from deliberate indifference to those with whom the police interact." *Id.* (citing *Gomez*, 759 F. Supp. 2d at 1338). To establish deliberate indifference, "a plaintiff must show a pattern of improper training and must show that the city was aware of its training program's deficiencies." *Gomez*, 759 F. Supp. 2d at 1338.

In the instant case, Plaintiff alleges that Defendant Hoeffer has been accused of rape, assault, sexual harassment, or other violence by at least eleven women since 1983. Several of those accusations were allegedly made directly to the Town of Palm Beach Shores Police Department during Defendant Hoeffer's employment. Viewing these allegations in the light most favorable to Plaintiff, Defendant Town of Palm Beach Shores was at a minimum aware of the accusations made to the Town of Palm Beach Shores Police Department. In response, Plaintiff alleges, Defendant Town of Palm Beach Shores took no action, creating an environment in which such conduct was condoned. This is sufficient at this stage of the proceedings to establish that Defendant Town of Palm Beach Shores was deliberately indifferent toward Defendant Hoeffer's misconduct and that this deliberate indifference led to inadequate police training. While a municipality is entitled to rely on an employee's common sense not to commit sexual assault in the absence of any knowledge of such conduct, and an alleged failure to train that employee does not show deliberate indifference to the rights of the municipality's inhabitants, that is not the case where, as here, the municipality is actually aware of a pattern of such conduct and is deliberately indifferent to it by failing to train officers not to engage in such conduct. *See*

*Doe ex rel. Doe v. City of Demopolis*, 461 F. App'x 915, 917 (11th Cir. 2012) (citing *Floyd v.*

*Waiters*, 133 F.3d 786, 796 (11th Cir. 1998)).

## V.   CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

**1.**    Defendant, Town of Palm Beach Shores', Motion to Dismiss Count II of Plaintiff's First Amended Complaint and Memorandum of Law in Support [DE 40] is **DENIED**.

**2.**    Defendant Town of Palm Beach Shores shall answer Count II of Plaintiff's First Amended Complaint and Jury Trial Demand [DE 32] by no later than **October 13, 2017**.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this 6th day of October, 2017.

Copies furnished to:                         ROBIN L. ROSENBERG
Counsel of record                            UNITED STATES DISTRICT JUDGE